IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LANSING TRADE GROUP, LLC,

    Plaintiff,

vs.                                             Case No. 12-2090-JTM

OCEANCONNECT, LLC,

    Defendant.

MEMORANDUM AND ORDER

Plaintiff Lansing Trade Group filed this action claiming breach of contract and breach of warranties against defendant OceanConnect. The matter is now before the court on OceanConnect's Motion to Dismiss or to Stay the Proceedings.

The dispute involves a contract for the sale of "RINs," or Renewable Identification Numbers. RINs are numbers associated with renewable fuels under Environmental Protection Agency (EPA) regulations.[1] They are used to measure and track renewable fuel production.[2] EPA rules require "obligated parties" – fuel refiners, importers and blenders – to annually show they are responsible

---

[1] A RIN is a unique number generated to represent a volume of renewable fuel pursuant to the regulations. Each RIN is a 38-digit number that identifies by numerical code various characteristics of the fuel represented, including the year the fuel was made, the producer, and a serial number for each gallon-RIN in the batch. *See* 40 CFR §80.1125. *See also* 40 CFR§80.1425. There are two sets of regulations – Subpart K and Subpart M – dealing with Renewable Fuel Standards. The latter applies to renewable fuel produced after July 1, 2010. *See Nat'l. Petrochemical & Refin. Ass'n. v. EPA*, 630 F.3d 145, 148-52 (D.C. Cir. 2010) (explaining evolution of the regulations).

[2] Renewable fuel means fuel that is produced from renewable biomass and that is used to replace or reduce the quantity of fossil fuel present in a transportation fuel. 42 U.S.C. §7545(o)(1)(J).

for introducing a certain volume of renewable fuels into gasoline sold in the United States. They do this by showing EPA they have acquired and are "retiring" a sufficient number of RINs.[3]

Under EPA regulations, fuel producers generate RINs as they make renewable fuel, with at least one RIN created for each gallon of renewable fuel produced. When a producer transfers ownership of the renewable fuel, it transfers the associated RINs with it to the purchaser. Once an obligated party acquires the fuel or once the fuel is blended with gasoline, the RINs are "separated" from the fuel and can be kept by the obligated party when it resells the fuel. When an obligated party gets enough RINs to meet its annual quota, it can start selling its "excess" RINs to other obligated parties. The buyers then may use these RINS as credits to meet their EPA quotas.[4] RINs can be bought and sold by anyone registered with EPA, and can be transferred any number of times.[5] Both plaintiff and defendant buy and sell RINs as part of their business. Plaintiff claims it bought RINs from defendant and resold them, only to learn the RINs were fraudulent and invalid. Defendant contends it likewise bought and sold the RINs without knowing of their fraudulent origin.

The EPA regulations declare a RIN to be invalid for a number of reasons, including if the RIN has expired (RINs have a limited life span), if it does not represent renewable fuel, or if it was otherwise improperly generated.[6] Upon a determination by any party that the RINs it owns are invalid, EPA rules require the party to adjust its records and to retire the invalid RINs.[7] Invalid RINs

---

[3] 40 CFR §80.1427.

[4] This credit system was required by Congress. *See* 42 U.S.C. § 7545(o)(5).

[5] 40 CFR §80.1450. Each time a party sells, separates or retires RINs, it must report the event on EPA's Moderated Transaction System. 40 CFR §80.1452.

[6] *See* 40 C.F.R. §80.1431(a).

[7] *Id*. *subs*. (b)(2).

2

cannot be used to satisfy a party's annual fuel obligation, even if the party acquired the RIN with a good faith belief that it was valid.[8] EPA regulations make it a violation for any person to create or transfer an invalid RIN.[9] Any person who commits a violation can be liable for a civil penalty.[10]

The defendant's motion to dismiss argues plaintiff has no claim for breach of contract because defendant delivered what the contract called for – a specified number of RINs. It says plaintiff does not – and cannot – allege that defendant made any express representation concerning the validity of the RINs. It further says plaintiff has no claim for breach of warranties because RINs are not "goods" under the UCC and the Code's warranty provisions do not apply. Defendant also contends the claims should be dismissed because plaintiff failed to join a required party. It says a producer named Clean Green Fuels (CGF) generated the disputed RINs, and it argues CGF must either be joined as a party or the claims must be dismissed. Alternatively, defendant asks the court to stay the case pending the outcome of a criminal case against the former president of CGF, who is now charged with a scheme to create and sell fraudulent RINs to various companies including OceanConnect. And in a supplemental motion to stay, defendant notes it recently filed suit against the EPA challenging its administrative enforcement of the Renewable Fuels Program. Among other things, the suit challenges EPA's refusal to allow companies that purchased RINs generated by CGF to use the RINs to meet their EPA quotas. It also seeks a declaration that OceanConnect acted in good faith and has no legal liability to persons to whom it sold its RINs. Defendant says the issues in the EPA suit "are similar to (if not determinative of) those in the instant action," and argues this

---

[8] *Id. subs.* (b)(1). There are some exceptions to this rule which are not relevant here.

[9] 40 CFR §80.1460(b)(2).

[10] 40 CFR §80.1463.

case should be stayed pending the outcome of the EPA action.

**I. Facts**

The following allegations are taken from plaintiff's Second Amended Complaint (Doc. 8). Plaintiff is a limited liability company with its principal place of business in Kansas. Defendant is an LLC with its principal place of business in New York. Plaintiff's business includes buying and selling RINs as a broker and trader; defendant's business likewise includes the marketing and selling of RINs.

Plaintiff purchased RINs from defendant by telephone and email. The RINs were delivered by defendant to plaintiff at its Kansas office. Three contracts were allegedly entered into: on July 29, 2010 (500,000 RINs for $255,000); on September 26, 2011 (500,000 RINs for $260,000); and on October 5, 2010 (250,000 RINs for $149,750).

Plaintiff thereafter sold the RINs to other buyers, only to learn the RINs were "fraudulent, invalid and of no value whatsoever." Plaintiff's purchasers have now demanded refunds and other relief from plaintiff, including reimbursement for penalties assessed by EPA for use of the invalid RINs in EPA filings.

Count I alleges that defendant had a contractual obligation to supply the goods specified in the contract, "namely RINs that were valid and marketable." Doc. 8, ¶ 14. Defendant allegedly breached the contract and caused damage to plaintiff by supplying goods that were non-conforming. Count II alleges that defendant breached the implied warranty of merchantability in K.S.A. § 84-2-314 because the RINs were unfit for the ordinary purposes for which they are sold. Count III alleges that defendant breached the warranty of fitness for a particular purpose in K.S.A. § 84-2-315

because defendant knew the particular purpose for which plaintiff acquired the RINs and knew plaintiff was relying on defendant to deliver suitable goods, namely valid RINs.

**II. Motion to Dismiss - Rule 12(b)(6).**

*A. 12(b)(6) Standard*.

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). This simplified notice pleading rule is justified because of the liberal discovery rules and availability of summary judgment to dispose of unmeritorious claims. *Id.*

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (clarifying and affirming *Twombly's* probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223-24. The court must assume that all allegations in the complaint are true. *Iqbal*, 129 S. Ct. at 1936-37. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz*, 534 U.S. at 511). The Tenth Circuit

utilizes a two-step process when analyzing a motion to dismiss. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

The court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and are undisputed. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). A court may also consider facts subject to judicial notice without converting the motion into one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

*B. Analysis*.

Plaintiff asserts three claims: breach of contract, breach of the implied warranty of merchantability, and breach of the implied warrant of fitness for a particular purpose. The parties agree the substantive law of Kansas governs the dispute.

Breach of Contract. The essential elements of a claim for breach of contract under Kansas law are: (1) The existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to plaintiff caused by the breach. *Commercial Credit Corporation v. Harris*, 212 Kan. 310, Syl. ¶ 2, 510 P.2d 1322 (1973); *City of Andover v. Southwestern Bell Telephone*, 37 Kan.App.2d 358, 362, 153 P.3d 561 (2007). Plaintiff's complaint alleges: defendant had a contractual obligation to provide valid and marketable RINs; plaintiff performed its part of the bargain by paying for the RINs; defendant breached its obligation by delivering non-conforming RINs; and plaintiff was damaged as a result. Under the standards governing a motion to dismiss, these allegations are sufficient to state a plausible claim

for breach of contract. Defendant argues it did not expressly warrant that the RINs were valid. But plaintiff's complaint alleges the goods specified in the contract were RINs "that were valid and marketable." Of course, whether plaintiff has proof to support that allegation is not a question for a motion to dismiss on the pleadings. As defendant recognizes, the court must accept plaintiff's well-pleaded factual allegations as true at this point. Accepting the allegation as true that the parties' agreement was for valid RINs to be provided, plaintiff has stated a claim for breach of contract.

Despite the allegations of the complaint, defendant contends plaintiff necessarily assumed the risk of the RINs being invalid because EPA regulations take a "buyer beware" approach and make the buyer responsible if it purchases invalid RINs. As defendant points out, EPA has said it believes "the 'buyer beware' aspect of the RIN trading program is one of the cornerstones of the program" and that it "mandates due diligence on the part of all RIN buyers."[11] But EPA's comments merely referred to the inability of an obligated party to claim credit for invalid RINs and the fact that it is a regulatory violation for any party to transfer invalid RINs.  EPA did not purport to require or disallow any particular terms of contract between parties to a RIN purchase.[12] In fact, in establishing the RIN trading program, EPA commented on the potential penalties from invalid RINs and noted:

> For this reason, obligated parties and RIN brokers should use good business judgment when deciding whether to purchase RINs from any particular seller and *should consider including prudent business safeguards in RIN transactions, such as requiring RIN sellers to sign contracts with indemnity provisions to protect the purchaser* in the event penalties are assessed because we find the RINs are invalid. Similarly, parties that sell RINs should take steps to ensure any RINs that are sold were properly created to avoid penalties that result from

---

[11] Citing 2012 Renewable Fuel Standards, 77 Fed.Reg. 1320, 1345 (Jan. 9, 2012).

[12] Defendant does not argue the federal law or regulations preempt any contract provision. Accordingly the court does not address that issue.

the transfer of invalid RINs.[13]

This clearly shows the EPA "buyer beware" scheme does not prevent parties to a RIN contract from allocating the risk of loss between themselves. There was no indemnity provision in the contract here, but plaintiff alleges the agreement specifically called for defendant to provide valid RINs. That allegation, if true, supports a claim for breach of contract.

Defendant also initially argued there could be no breach of contract until EPA made a final ruling declaring the underlying CGF RINs invalid. Doc. 12 at 7. Defendant effectively concedes the EPA's enforcement ruling of May 14, 2012 constitutes such a final agency ruling, *see* Doc. 14 at 5, notwithstanding defendant's attempt to soft-pedal the issue.[14] At any rate, plaintiff's allegation of the RINs' invalidity is sufficient to withstand a motion to dismiss. Defendant also asserts plaintiff's claim of damages is speculative because other parties to whom plaintiff sold the RINs have demanded compensation but have not yet filed suit against plaintiff. Plaintiff's assertion of damages is not implausible, however, given its allegation that it paid defendant hundreds of thousands of dollars for invalid and worthless RINs. In sum, the complaint states a claim for breach of contract.

<u>Breach of Warranties under UCC Article 2</u>. Defendant next contends no implied warranties attached to the transaction because RINs are not "goods" within the meaning of the UCC. Article 2 of the Kansas UCC applies to the sale of goods, with "goods" meaning "all things ... which are movable at the time of identification to the contract for sale other than the money in which the price

---

[13] Regulation of Fuels and Fuel Additives: Renewable Fuel Standard Program, 72 Fed.Reg. 23900, 23950, 2007 WL 1243835 (May 7, 2007) [emphasis added].

[14] Defendant says it does not really concede the issue because it is now arguing only that the EPA action "is in the ballpark of, if not a final agency decision." Doc. 18 at 2.

8

is to be paid, investment securities [ ] and things in action." K.S.A. § 84-2-105(1).  *See also Wachter Mgmt. Co. v. Dexter & Chaney, Inc.*, 282 Kan. 365, 144 P.3d 747 (2006).

Asking whether a RIN is a "moveable thing" is a bit of an exercise in philosophy.  RINs are numbers. A RIN conforming to the regulations confers a benefit when an obligated party retires it and applies it toward the party's renewable fuel obligation. Separated RINs can be bought and sold for investment purposes as commodities.  In that respect they resemble a number of other commodities –  wheat, oil, gold, just to name a few  – which are clearly goods under Article 2. Unlike those commodities, however, separated RINs are essentially informational rather than tangible, and they have no intrinsic value. They have value only because they confer a right to claim a fuel credit under EPA regulations. In other words, they constitute a regulatory credit – a form of intangible right.

Even if this intangible right can be considered personal property and traded, the court concludes it does not constitute "goods" within the meaning of the UCC.  *See* 1 Hawkland UCC Series §2-105:2 ("The exclusion of 'things in action' and the inclusion of 'things which are movable' suggests that Section 2-105 limits goods to tangible personal property."). RINs are more properly categorized as choses (or things) in action, a term which refers to "the infinite variety of contracts, covenants, and promises which confer on one party the right to recover a personal chattel or a sum of money from another by an action." 63C Am.Jur.2d Property §23.  *See also Golden v. Den-Mat Corp.*, ___P.3d ___, 2012 WL 1563981, * (Kan.App., May 4, 2012) (UCC definition of goods is expansive but excludes "legal rights to things or property."). This conclusion is bolstered by decisions finding the sale of comparable intangible items – including licenses and contract rights – to be outside the scope of Article 2.  *See, e.g.*, *Foster v. Colorado Radio Corp.*, 381 F.2d 222, 225

(10th Cir. 1967) (radio station license); *Stewart v. Lucero*, 121 N.M. 722, 918 P.2d 1 (1996) (right to operate catalogue business); *Takisada Co., Ltd. v. Ambassador Factors Corp.*, 147 Misc.2d 435, 556 N.Y.S.2d 788 (1989) (accounts receivable); *Kennedy v. Providence Hockey Club, Inc.*, 119 R.I. 70, 77, 376 A.2d 329 (1977) (ticket to hockey game); *Hoydic v. B&E Juices, Inc.*, 2008 WL 803642, *6 (Conn.Super.Ct., Feb. 27, 2008) (distributorship agreement); *Atlas Equity, Inc. v. Chase Bank, USA, N.A.*, 403 Fed.Appx. 190, 192, 2010 WL 4462731 (9th Cir. 2010) (credit card debt); *Call v. Czaplicki*, 2010 WL 3724275, *12 (D.N.J., Sept. 16, 2010) (insurance contract). *See also* 2 Anderson U.C.C. §2-105:62 (3d ed.) (listing sale transactions not covered by Article 2, including sales of: copyrights, patents, goodwill, a crop allotment, membership in a club, permit to use dock space, and breeding rights) and *id*. §2-105:76 ("A governmental license or permit of any kind does not constitute goods."). *Cf. Digital Ally, Inc. v. Z3 Technology, LLC*, 2010 WL 3974674 (D. Kan., Sept. 30, 2010) (most courts find a sale of computer software to be a sale of goods).

Because RINs are not goods within the meaning of K.S.A. § 84-2-105(1), plaintiff's breach of warranty claims under K.S.A. § 84-2-314 and § 84-2-315 fail to state a claim upon which relief can be granted. The court will grant OceanConnect's motion to dismiss Counts II and III of the Second Amended Complaint.

### III. Motion to Dismiss - Rules 12(b)(7) & 19.

Defendant also seeks dismissal of the complaint for failure to join a required party. It argues Clean Green Fuels (CGF), the originator of the allegedly invalid RINs, must be joined in the action. Defendant contends CGF meets the requirements of Rule 19 and a failure to join it would leave the court unable to accord complete relief among the parties as well as subject OceanConnect to a risk

of multiple liability. In response, plaintiff argues the rule of *Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.*, 104 F.3d 1205 (10th Cir. 2007) precludes dismissal, because CGF is subject to impleader under Rule 14 and is entitled to intervene under Rule 24. Notably absent from defendant's Reply Brief is any mention of *Thunder Basin Coal* or the rule cited by plaintiff. Defendant identifies no reason why it could not join CGF as a party. And CGF likely has defenses that shares common questions of fact or law with this action, such that it could at least seek permissive intervention. "[I]f the defendant is capable of bringing into the litigation a nonparty whose presence is allegedly required to fully resolve the controversy and if that nonparty is otherwise capable of intervening, then the nonparty cannot be considered indispensable under Rule 19(b). *Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997) (*citing Pasco Int'l.(London) Ltd. v. Stenograph Corp.*, 637 F.2d 496 (7th Cir. 1980)). *See also United Building Supply, Inc. v. Sherman*, 1997 WL 157200 (D. Kan., Mar. 13, 1997) (applying *Thunder Basin Coal*). Under the circumstances, it is clear defendant is not entitled to dismissal of the complaint for plaintiff's failure to join CGF.

**IV. Motion to Stay**.

Defendant next moves to stay the case. It first argues the case should be stayed pending the outcome of the criminal action against the former president of Clean Green Fuels. Defendant argues the allegation that the CGF president created and sold false RINs "is the primary wrongdoing that gives rise to each and every one of the 45 charges against" him in the criminal action. But defendant's suggestion that judicial economy would be furthered by awaiting the outcome of the criminal case is wholly unpersuasive. The factors relevant to whether a civil case should be stayed

pending the outcome of a parallel criminal case – if the action against the CGF president can even be considered parallel – weigh heavily against a stay. *See, e.g.*, *Wilson v. Olathe Bank*, 1998 WL 184470 (D. Kan., Mar. 2, 1998) (discussing factors). The parties to this action will not be prejudiced if the case proceeds, nor will the interests of any persons not parties be effected. No Fifth Amendment rights will be impaired by proceeding here. Nor is there evidence the public interest will be furthered by delaying this action. The claim now before the court is one for breach of contract between two parties to a sales agreement. Defendant fails to show how the interests of justice weigh in favor of a stay of the case. *Cf. Commodity Futures Trading Comm'n. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.").

After the instant case was filed, defendant filed suit against the EPA in U.S. District Court for the District of Columbia under the Administrative Procedure Act (APA). That case involves a challenge to the lawfulness of EPA's enforcement rules, including its imposition of penalties on good-faith purchasers of invalid RINs. Defendant contends EPA acted contrary to law by penalizing good-faith RIN purchasers because EPA did not exercise due diligence in its investigation of Clean Green Fuels and failed to notify RIN participants of suspected fraud by CGF and other EPA-registered fuel producers. Defendant now argues the instant case should be stayed under the court's general discretionary power because doing so "would promote judicial and administrative consistency in areas within the specific expertise of the EPA." Defendant notes there are now at least four separate actions pending against it in different districts based on these allegedly invalid RINs. It contends "a definitive ruling in the APA Action will obviate the need to sort through the

complicated administrative issues at the heart of this case." Defendant does not expressly rely on the doctrine of primary jurisdiction – in which district courts may stay a case to allow an agency to render an opinion on matters within its special competence – but argues it nonetheless "provides a helpful analogy and confirms the wisdom of issuing a stay."

The rationale for primary jurisdiction does not really apply here since EPA has already issued a final ruling and defendant has filed its APA challenge in an Article III court. At any rate, the factors relevant to primary jurisdiction do not favor a stay. *See Marshall v. El Paso Nat. Gas Co.*, 874 F.2d 1373, 1376 (10th Cir. 1989) (listing relevant factors). *See also Mical Communications v. Sprint Telemedia*, 1 F.3d 1031, 1038 (10th Cir. 1993) (district court should defer "only if the benefits of obtaining the agency's aid outweigh the need to resolve the litigation expeditiously."). By and large, defendant's claims in the APA action are not based on matters beyond the conventional experience of judges and do not require the special expertise of the agency to resolve. They are based on due process, estoppel, and judicial standards for review of agency actions – standards that courts routinely apply. And although defendant is correct that the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort," *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), it is also generally true that the applicant for a stay "must make out a clear case of hardship or inequality in being required to go forward..." *Id*. at 255. Under the circumstances, defendant has shown no grounds for staying this case.

IT IS ACCORDINGLY ORDERED this 26th day of June 2012, that defendant's original Motion to Dismiss or Stay (Doc. 9) is denied as moot. Defendant's Amended Motion to Dismiss or Stay (Doc. 11) is granted in part and denied in part. The motion is granted as to Counts II and III

of the Second Amended Complaint (the UCC warranty claims). Those claims are dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The motion to dismiss or stay is denied as to Count I, the breach of contract claim.

s/ J. Thomas Marten            
J. THOMAS MARTEN, JUDGE
